**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| VANDA PHARMACEUTICALS INC. et al.,<br>Plaintiffs,<br>v.<br>FOOD AND DRUG ADMINISTRATION et al.,<br>Defendants. | Civ. No. 4:25-cv-1648 |

# OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER


Richard Salgado (TBN 24060548)
McDermott Will & Schulte LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295-8000
rsalgado@mwe.com

Paul W. Hughes (*pro hac vice*)
Connor J. Suozzo (*pro hac vice* motion pending)
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

*Attorneys for Plaintiff*


**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Table of Authorities ........ ii
Introduction ........ 1
Background ........ 2
Argument ........ 4
I. Venue is proper because the Texas Plaintiffs have standing to assert their right-to-listen claims. ........ 4
A. The Texas Plaintiffs are injured by FDA's burden on their receipt of Vanda's firm-initiated communication. ........ 6
B. The Texas Plaintiffs are injured by FDA's burden on their receipt of other communications from Vanda. ........ 11
II. The case should not be transferred for convenience. ........ 15
A. The private interest factors do not favor a transfer. ........ 16
B. The public interest factors do not favor a transfer. ........ 18
C. Transfer is not in the interest of justice. ........ 20
Conclusion ........ 20

**TABLE OF AUTHORITIES**

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2009) ....................4, 10

*Apter v. Dep't of Health & Hum. Servs.*,
80 F.4th 579 (5th Cir. 2023) ....................18, 20

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 383 (5th Cir. 2024) ....................5, 14, 15

*In re Chamber of Com. of United States of Am.*,
105 F.4th 297 (5th Cir. 2024) ....................18

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ....................15, 19

*Cramer v. Skinner*,
931 F.2d 1020 (5th Cir. 1991) ....................1, 6, 11, 13, 14

*Defense Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ....................15, 16, 18, 19

*Gen. Land Off. v. Biden*,
71 F.4th 264 (5th Cir. 2023) ....................4

*Greenwood Utilities Comm'n v. Mississippi Power Co.*,
751 F.2d 1484 (5th Cir. 1985) ....................9

*Hunt v. Nat'l Broad. Co.*,
872 F.2d 289 (9th Cir. 1989) ....................10

*Kleindienst v. Mandel*,
408 U.S. 753 (1972)....................10

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ....................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................5

*In re Media Matters for Am.*,
143 F.4th 631 (5th Cir. 2025) ....................1, 15, 16

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................6, 7, 8, 10

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................5, 14, 15

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)....................7, 9

**Cases—continued**

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976)....................10

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022)....................18

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................1, 19

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008)....................5

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023)....................16

*Matter of Trinity Tugs, LLC*,
2025 WL 729714 (S.D. Tex. 2025)....................16

*United States v. Adkins*,
741 F.2d 744 (5th Cir.1984)....................11

*United States v. Gatto*,
763 F.2d 1040 (9th Cir. 1985)....................11

*Va. Citizens Consumer Council, Inc. v. State Bd. of Pharm.*,
373 F. Supp. 683 (E.D. Va. 1974)....................13

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)....................5, 11, 14, 19, 20

*Vanda Pharms. Inc. v. FDA*,
2025 WL 2371368 (D.C. Cir. 2025)....................2, 13, 17

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)....................15, 16, 20

*Washington Legal Found. v. Henney*,
202 F.3d 331 (D.C. Cir. 2000)....................2, 17

**Constitution and Statutes**

U.S. Const. art. III, § 2....................5

U.S. Const. amend. I....................1, 3, 5, 7, 8, 9, 10, 19

21 U.S.C.
§ 331(b)....................3
§ 352....................3
§ 355....................17
§ 355(c)(1)....................17

28 U.S.C.
§ 1404(a)....................15, 18, 20

## INTRODUCTION

The First Amendment guards against the "dangers of suppressing information," especially "in the fields of medicine and public health, where information can save lives." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566, 578 (2011). It protects speakers and listeners alike.

The Texas Plaintiffs, Dr. Mary Talley Bowden and Ms. Ally Totah, each have an acute interest in receiving truthful information about off-label treatments for jet lag. Dr. Bowden is a physician specializing in the treatment of sleep disorders, and Ms. Totah frequently suffers from jet lag symptoms. Vanda Pharmaceuticals Inc. wishes to share truthful information about its product, Hetlioz®, an effective off-label treatment for jet lag as shown by three clinical studies.

But the Plaintiffs cannot engage in their desired speech because FDA treats it as a crime, relying on a distorted interpretation of the misbranding statute. It is not unlawful for doctors to prescribe medications for off-label uses—the practice is well-established and ubiquitous. But according to the agency, it *can* be unlawful for drug companies to *speak* about scientific discoveries that support off-label uses. The looming threat of prosecution silences those companies, including Vanda, therefore precluding Dr. Bowden and Ms. Totah from receiving Vanda's speech in this district.

Yet, unhappy with the Plaintiffs' choice of venue, FDA wants to transplant the litigation to Washington, D.C. *See* Dkt. 20 (Mot.). To achieve that, it seeks to remove the Texas Plaintiffs from the lawsuit by denying their injury. As a backup, the agency asks for a discretionary transfer.

Both tactics fail. The Texas Plaintiffs plainly have standing because they have a "direct stake" in Vanda's speech—including but not limited to the materials attached to the complaint, which they have *not* already received—and are continually prevented from receiving it. *Cramer v. Skinner*, 931 F.2d 1020, 1027 (5th Cir. 1991). The discretionary transfer request must also be rejected because a transfer would not be more convenient or just, and FDA has not "clearly establish[ed] good cause," as required. *In re Media Matters for Am.*, 143 F.4th 631, 638 (5th Cir. 2025).

## BACKGROUND

Dr. Mary Talley Bowden is a physician specializing in sleep disorders who resides and practices in Houston, Texas. Compl. ¶ 24. She is interested in receiving communications about off-label treatments for jet lag, a Circadian Rhythm Sleep-Wake Disorder with no FDA-approved treatment. Compl. ¶¶ 25, 78. Ms. Ally Totah resides in Harris County, Texas. Compl. ¶ 26. Due to frequent flights, Ms. Totah often experiences symptoms of jet lag, and she too is interested in receiving communications about its off-label treatments. Compl. ¶ 26.

Vanda Pharmaceuticals Inc. manufactures Hetlioz®, an FDA-approved treatment for a Circadian Rhythm Sleep-Wake Disorder commonly referred to as Non-24. Compl. ¶ 76.[1] Hetlioz® treats Non-24 by resetting the body's sleep cycle to align properly with the day-night cycle. Compl. ¶¶ 74-76. Vanda conducted multiple clinical trials that showed Hetlioz® is an effective jet lag treatment, too. Compl. ¶¶ 79-80. Vanda accordingly applied to add jet lag to the FDA-approved uses of Hetlioz®.[2] Compl. ¶ 84. In the meantime, Vanda wants to share its findings about the efficacy of Hetlioz® as a jet lag treatment with physicians, patients, and the public, and especially with physicians like Dr. Bowden and individuals like Ms. Totah. Compl. ¶¶ 107, 118.

Because Hetlioz® is already approved for Non-24, it is lawful and appropriate for physicians, in exercising informed medical judgment, to prescribe it "off label," meaning, as a treatment for other disorders. Compl. ¶¶ 37-52; *see, e.g.*, *Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000) ("[I]t is undisputed that the prescription of drugs for unapproved uses is commonplace in modern medical practice and ubiquitous in certain specialties."). To exercise that judgment, however, doctors must actually possess information about off-label treatments. One

[1] Hetlioz® is also approved for sleep disturbances associated with a condition called Smith-Magenis Syndrome. Compl. ¶ 76.

[2] Although FDA originally denied Vanda's application, the D.C. Circuit has since held that it was arbitrary and capricious to do so without a hearing because the agency could not "adequately explain[] any flaws in Vanda's evidence," and it instead "mischaracterize[d] the evidence" before it. *Vanda Pharms. Inc. v. FDA*, No. 24-1049, 2025 WL 2371368, at *6-7 (D.C. Cir. 2025).

important way for doctors and patients to obtain this information is by receiving it directly from the source—companies like Vanda that conduct drug trials. Such companies often prepare "firm-initiated communications" containing scientific studies and other content to share with healthcare providers about off-label uses of their products. FDA, *Communications From Firms to Health Care Providers Regarding Scientific Information on Unapproved Uses of Approved/Cleared Medical Products Questions and Answers: Guidance for Industry* at 15 (Jan. 2025), perma.cc/S7Y8-CGMA ("2025 Guidance").

FDA treats communications about off-label treatments—even if truthful and non-misleading—as evidence that a drug is "misbranded." Compl. ¶¶ 53-73. Misbranding is a criminal offense that ordinarily applies to drugs with false statements on their labels. 21 U.S.C. §§ 331(b), 352. But under FDA's policy, if a company engages in truthful, non-misleading speech about off-label uses, especially *persuasive* speech, it risks criminal liability. Compl. ¶¶ 53-73.

In 2022, Vanda sent FDA certain materials for "review and comment" that it wanted to disseminate to "physicians, patients, and the general public" as part of a firm-initiated communication. Compl. ¶ 118 & Ex. A. The package comprised a variety of truthful and non-misleading study reprints, study summaries, coversheets, and eleven statements about Hetlioz® as an off-label jet lag treatment. Compl. ¶¶ 126-196 & Ex. A. FDA demurred, saying that it would provide a "detailed response" later—but then it never did. Compl. ¶¶ 120-124.

Fearing prosecution, Vanda has refrained from communicating about the off-label use of Hetlioz®. Compl. ¶¶ 107-125. Consequently, Dr. Bowden and Ms. Totah (the "Texas Plaintiffs") cannot receive Vanda's communications. The Plaintiffs jointly filed this First Amendment challenge in the Southern District of Texas. Vanda challenges the burden on its right to engage in protected speech, and the Texas Plaintiffs challenge the burden on their right to receive Vanda's protected speech.

The complaint attached the package of proposed materials Vanda had sent to FDA for

review and feedback. Compl. Exs. A-I. But Vanda certainly does not intend to distribute that entire package of various statements to doctors; rather, it wishes to select statements and materials for distribution in its editorial discretion. Nor did the complaint include other communications Vanda intends to distribute and the Texas Plaintiffs want to receive. Nor, contrary to the central assumption underpinning the government's motion, have the Texas Plaintiffs received or actually possessed even the complaint exhibits themselves. Bowden Decl. ¶ 16; Vanda Decl. ¶¶ 6, 18.

## ARGUMENT

### I. VENUE IS PROPER BECAUSE THE TEXAS PLAINTIFFS HAVE STANDING TO ASSERT THEIR RIGHT-TO-LISTEN CLAIMS.

Defendants' motion to dismiss for improper venue under Rule 12(b)(3) relies entirely on the contention (raised under Rule 12(b)(1)) that the Texas Plaintiffs lack standing to assert their claims. Mot. 1-2. That is wrong: FDA's burden on the Texas Plaintiffs' right to receive information is a cognizable injury for two independent reasons. *First*, the Texas Plaintiffs face an ongoing burden on their receipt of firm-initiated communications sourced from but not limited to the materials attached to the complaint—which the Texas Plaintiffs have not received in any event. *Second*, they face an ongoing burden on the receipt of other communications from Vanda about the efficacy of Hetlioz® as a treatment for jet lag.

When deciding a motion "under either Rule 12(b)(1) or Rule 12(b)(3)," this Court must take the complaint's factual allegations as true and "view all the facts in a light most favorable to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009); *see also Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "Moreover, under both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco*, 570 F.3d at 238. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023) (cleaned up).

Article III gives federal courts jurisdiction over "cases" and "controversies," U.S. Const. art. III, § 2, cl. 1. The doctrine of standing operationalizes the case-or-controversy requirement by requiring that plaintiffs have a "personal stake" in the litigation. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008). Plaintiffs must allege an "injury in fact" that is fairly traceable to the defendant's action and would likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up).

Plaintiffs have standing to assert a "right to receive" information protected by the First Amendment. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976); *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 391 (5th Cir. 2024). Those asserting these "right to listen" claims must have a "concrete, specific connection" to would-be speakers (*Murthy v. Missouri*, 603 U.S. 43, 75 (2024)), although "there is no requirement" to "name a specific" speaker at the pleading stage (*Ass'n of Am. Physicians*, 103 F.4th at 391).

Listeners have a sufficient connection to speakers where they possess a specific interest affected by the content of the speech. For example, "prescription drug consumers" had a sufficient connection to "pharmacists" who "wish[ed] to communicate to them through advertising and other promotional means, concerning the prices of such drugs," but were prohibited from doing so. *Va. State Bd.*, 425 U.S. at 753-754. Such consumers "would greatly benefit if the prohibition were lifted and advertising freely allowed." *Id.* at 753; *see also Murthy*, 603 U.S. at 75 (reaffirming standing in *Virginia State Board*). Similarly, an association of physicians whose "conferences … rely on robust debate" had a sufficient connection to "physicians" that "would have voiced [their] opinions" "about Covid-19, Dr. Fauci, and abortion" at those conferences, but for a threat of decertification. *Ass'n of Am. Physicians*, 103 F.4th at 390-392. And individuals that "travel[] frequently to states beyond the Love Field [Airport's] service area on regularly scheduled passenger

flights" had a sufficient connection to airlines that were restricted from disseminating "information concerning travel beyond the Love Field service area." *Cramer*, 931 F.2d at 1026 (plaintiff had "direct stake" in litigation because the restrictions "ma[de] planning his trips more difficult").

**A. The Texas Plaintiffs are injured by FDA's burden on their receipt of Vanda's firm-initiated communication.**

Under precedents like *Virginia State Board*, *Ass'n of American Physicians*, and *Cramer*, the Texas Plaintiffs are injured by the burden imposed on their receipt of Vanda's firm-initiated communications. First, the Texas Plaintiffs are unable to receive those communications, which will include some or all of the materials attached to the complaint but will be broader and differently arranged, reflecting Vanda's editorial discretion. Second, the government is simply incorrect in its assumption that the Texas Plaintiffs have already received the complaint exhibits themselves.

**1.** Even assuming the Texas Plaintiffs had already received the complaint exhibits (as discussed below, they have not), they certainly have not received Vanda's intended communications, which—contrary to FDA's claim (Mot. 9)—will not be identical to the package of materials attached to the complaint. The complaint exhibits are the materials Vanda "submitted … to FDA" for its "review and comment" in proposing to make "some or all" of them "available to physicians, patients, and the general public." Compl. ¶ 118 & Ex. A. While those materials will form the substantive foundation of certain communications Vanda wishes to distribute, the final communications will be "a distinctive expressive product," not the bare compilation of the complaint exhibits as currently arranged. *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024). As FDA acknowledges (Mot. 5 & n.3 & Ex. 3), Vanda seeks to distribute "firm-initiated communication[s]" as described in FDA's guidance on off-label speech. Compl. ¶ 9 (citing 2025 Guidance at 15).

Like any firm-initiated communication, Vanda's would be compiled and presented in the way Vanda chooses. Vanda Decl. ¶¶ 9-17. FDA guidance presupposes that such communications do not merely "consist of source publications" and raw "scientific content." 2025 Guidance at 10, 26-27. Rather, FDA acknowledges the "editorial input" reflected in source publications and "a

firm's choice to draw … attention" to certain content, and the "communication techniques" that drive "efforts to persuade" recipients. 2025 Guidance at 10-11, 28; *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909 (1982) (efforts "to persuade" are "speech in its most direct form").

That aligns perfectly with First Amendment case law: "An entity 'exercis[ing] editorial discretion in the selection and presentation' of content is 'engage[d] in speech activity.'" *Moody*, 603 U.S. at 731. Vanda's firm-initiated communication would differ from the raw collection of underlying materials it sent for FDA's review, manifesting Vanda's editorial discretion in several ways.

*First*, Vanda plans to add and rearrange substantive content to emphasize aspects of the underlying publications and address questions from doctors and consumers. Vanda Decl. ¶¶ 9-12. FDA's guidance anticipates that firms will include "presentational elements and other communication techniques to help explain or illustrate the scientific content." 2025 Guidance at 26. Thus, while the package sent to FDA was geared towards agency review, the final firm-initiated communications will be expressively aimed at doctors, patients, and the public, using visual and written information as appropriate. Compl. ¶¶ 118, 120.

Vanda specifically will provide supportive data to address anticipated questions, such as "How did you determine that the participants in the JET study were susceptible to jet-lag related sleep disturbance?" Vanda Decl. ¶ 10 (listing other questions); *id.* ¶¶ 11-12 (describing content responsive to such questions). And Vanda will not supply physicians and patients with the unadorned, ordered list of eleven statements about Hetlioz® that appears in the proposal to FDA. *See* Compl. ¶¶ 161-196 & Ex. A at 32-33; Vanda Decl. ¶ 17. The proposal itself notes that "[a]ll statements will be accompanied by the disclosure that HETLIOZ® has not been approved by the FDA to treat jet lag disorder," confirming that the ordered list does not reflect the final arrangement. Compl. Ex. A at 32. Indeed, Vanda would hardly distribute its materials without a cover letter or release, and such document likely will contain one or more of the proposed statements in a manner

oriented to the intended audience.[3] Compl. Ex. A at 2.

*Second*, Vanda informed FDA that the distribution would include "some or all of the communications" attached (Compl. Ex. A at 2, 32), thus invoking the "compiling and curating" function that constitutes "expressive activity." *Moody*, 603 U.S. at 731. Suppose Vanda omits one study reprint from its distribution in order to "draw attention" to the other two studies. 2025 Guidance at 10; *see also* Compl. ¶¶ 81-83 (describing the three studies). Even more centrally, Vanda would not distribute to doctors the entire spectrum of cover sheets and statements about each study—from completely anodyne to more active commentary—that were submitted to FDA (Compl. Ex. A at 5-26, 32-33); it would *select* the set of statements it believes best communicates its viewpoint about the scientific truth. That selection of statements to include, and critically, *not* to include, is itself an expressive act protected by the First Amendment. *See, e.g.*, *Moody*, 603 U.S. at 731 ("Deciding on the … speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own."); *id.* at 728-733 (collecting cases).

*Third*, FDA guidance presumes that firm-initiated communications will include some "recommended disclosures" that are "suggested …, but not required." 2025 Guidance at 3, 10; *see generally id.* at 15-29. The complaint references certain recommended statements that Vanda "disagrees with" and would not include (Compl. ¶ 230), but Vanda retains discretion to include statements with which it agrees.[4] Vanda will not follow FDA's recommendation to say that safety and efficacy "has not been established" (2025 Guidance at 15; Compl. ¶ 228), but it *could*, for example, choose to provide "[a] copy of the most current FDA-required labeling" (2025 Guidance at 16;

---

[3] Vanda could also make "use of color, typeface, font style, contrast, and white space" to aid its presentation, as FDA guidance recognizes. 2025 Guidance at 26.

[4] Due to FDA's coercive misbranding theory, the Plaintiffs view these "recommendations" as "effectively requirements" now, but a favorable decision from this Court vindicating Plaintiffs' speech rights would allow Vanda to select only the recommended disclosures it wants to include and enable the Texas Plaintiffs to view the communication with those disclosures. Compl. ¶ 68.

Vanda Decl. ¶ 14). *See* Compl. ¶ 68. The recommended disclosures that Vanda will include are not among the materials attached to the complaint, as there would have been no purpose in requesting FDA's review of optional statements the agency itself recommends. The Texas Plaintiffs thus are suffering an ongoing deprivation of actual firm-initiated communications, curated to include Vanda's chosen disclosures and *only* those disclosures. *See* Compl. ¶¶ 225-231 (explaining that the recommended disclosures are "compelled speech" under the challenged regime).

*Fourth*, Vanda's distribution will further differ from the package sent to FDA because it may reflect FDA's "feedback." Compl. Ex. A at 2. Vanda contacted the Director of FDA's Center for Drug Evaluation and Research (CDER) not for permission to distribute the proposed content as is, but to "request[] your review and comment." Compl. Ex. A at 2; *see also id.* at 32 ("Vanda requests your evaluation of each statement identified below, on an individualized basis."). Vanda cited the office's "demonstrated record of providing substantive feedback on similar communications" (*id.*), and indeed, Vanda still awaits the agency's "detailed response." Compl. Ex. L. Although the proposed materials are truthful and non-misleading (*e.g.*, Compl. ¶ 14), Vanda anticipated that FDA's feedback would nevertheless prompt certain revisions, such as alterations to phrasing or the addition of other content. Vanda Decl. ¶ 15. The Texas Plaintiffs lack access to the distribution that would reflect these editorial changes.

All these "efforts to persuade" are "undoubtedly protected by the First Amendment," yet the Texas Plaintiffs are denied them. *Greenwood Utilities Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1499 (5th Cir. 1985); *accord Claiborne*, 458 U.S. at 909.

The complaint makes it abundantly clear that Vanda's final firm-initiated communications are yet to come. It alleges that Vanda "has refrained from sharing" information due to the threat of prosecution (Compl. ¶ 111), and it repeatedly highlights Dr. Bowden's and Ms. Totah's current, ongoing injury in lacking access to the materials Vanda "still wishes to distribute" (Compl. ¶ 126). It states that declaratory relief would "eliminate the harm to … Dr. Bowden[] and Ms. Totah"

which is "*currently caused*" by FDA's misbranding policy and is "*preventing* Dr. Bowden's and Ms. Totah's receipt of [Vanda's] speech" (Compl. ¶ 35 (emphasis added)); that FDA's regulatory stance "deprives Dr. Bowden, Dr. Bowden's patients, and Ms. Totah of pertinent treatment information" (Compl. ¶ 17); that "[a]s a consequence" of Vanda refraining from disseminating its communications, "Dr. Bowden … could not view" them (Compl. ¶ 122); and that Dr. Bowden "is unable to view" those communications (Compl. ¶ 15).

In view of the above, FDA's assertion that the Texas Plaintiffs "*already possess*" the communications Vanda would like to make "*exactly* how Vanda wants to" present them (Mot. 9) is not merely an unfavorable reading of the complaint—it is an impossible one. *See Ambraco*, 570 F.3d at 237 (complaint must be construed in the "light most favorable to the plaintiff"). The agency's chief argument mistakes the proposed materials Vanda sent to FDA for the actual distributions Vanda will send to "physicians, patients, and the general public." Compl. ¶ 118 & Ex. A. Although the actual distribution will *include* that substantive content—which is why Plaintiffs seek a declaration of its truthful and non-misleading character—it would also reflect Vanda's "editorial discretion in the selection and presentation" thereof. *Moody*, 603 U.S. at 731; *cf. Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (access to a speaker's raw "ideas through his books and speeches" does not defeat a First Amendment claim where plaintiffs remained deprived of the speaker's direct presentation, which has "particular qualities").

**2.** Even if the Texas Plaintiffs merely asserted an interest in receiving the raw materials attached to the complaint, they would still have standing because, in fact, they have *not* received those materials, either from Vanda or from their shared counsel.[5] Bowden Decl. ¶ 16; Vanda Decl. ¶ 18. Instead, the complaint and the materials attached thereto are in their case file, which is

[5] If Plaintiffs do eventually receive the materials, even in the form curated by Vanda, that would not moot their claims for the same reason that subsequent publication of materials does not moot a prior-restraint claim: the injury is capable of repetition, yet evading review. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 543-546 (1976); *Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 292 (9th Cir. 1989).

possessed by their lawyers. *See* Bowden Decl. ¶ 16. The government's assumption that Vanda "clearly *has*" sent the materials to the Texas Plaintiffs (Mot. 12) is therefore simply not correct.

This distinction is dispositive here because the "ability to receive the information by asking" does not undermine the injury in a right-to-listen claim. *Cramer*, 931 F.2d at 1026; *cf. United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985) (discussing the difference between "actual possession" and "constructive possession" in context of a Federal Rule) (citing *United States v. Adkins*, 741 F.2d 744 (5th Cir.1984)). That is exactly what the Texas Plaintiffs would need to do to view the attached materials now—"ask for the information" from their lawyers (*Cramer*, 931 F.2d at 1026), or else purchase it from PACER or physically travel to a courthouse to use a public access terminal. Although that "personal inconvenience … may be slight," it is "nonetheless real and nonetheless an injury," because an "identifiable trifle" is enough for standing. *Id.* at 1027; *see also Va. State Bd.*, 425 U.S. at 757 n.15 (foreclosure of one means of receipt creates a cognizable injury even if the information sought is "otherwise reasonably available" "by some other means"). FDA's chilling of the Texas Plaintiffs' receipt of materials from Vanda (let alone final firm-initiated communications, *see supra* at 6-10) is an injury in fact.

FDA's argument rests on the assertion that the Texas Plaintiffs have already received speech that they have not, in fact, received. *See* Mot. 8-12. Because a burden on the receipt of speech is a cognizable injury, FDA's motion must fail.

### B. The Texas Plaintiffs are injured by FDA's burden on their receipt of other communications from Vanda.

Moreover, the complaint does not assert *only* the Texas Plaintiffs' right to receive firm-initiated communications based upon the complaint attachments. It also alleges that they are harmed by FDA's ongoing burden on their receipt of *other* communications about the efficacy of Hetlioz® as a jet lag treatment. These allegations provide another independent basis for standing.

**1.** The allegations about Vanda's burdened speech are clear: "Vanda wishes to provide to doctors and patients the scientific information it possesses regarding the efficacy Hetlioz® has

demonstrated in treating jet lag disorder." Compl. ¶ 107. It "has refrained from sharing truthful, non-misleading information about off-label uses for Hetlioz®" to avoid prosecution. Compl. ¶ 111. And again, "[b]ut for FDA's restrictions on sharing truthful, non-misleading information, Vanda would disseminate truthful and non-misleading literature regarding the efficacy of Hetlioz® in treating jet lag disorder." Compl. ¶ 117. None of these descriptions cabins Vanda's chilled speech to the materials attached to the complaint. To the contrary, the complaint alleges a "chilling" effect on *all* of Vanda's speech "about off-label uses for Hetlioz®", without qualification. Compl. ¶ 35.

The allegations about the Texas Plaintiffs' asserted interest have the same scope. The Complaint states: "Physicians—including Dr Bowden—are interested in receiving these results, *and other truthful and non-misleading information about off-label uses for Hetlioz®*, from Vanda." Compl. ¶ 109 (emphasis added). Referring to the chilling effect on "truthful, non-misleading information about Hetlioz®'s ability to treat jet lag disorder," the complaint alleges that "doctors like Dr. Bowden and patients like Ms. Totah are prevented from receiving this information." Compl. ¶ 73.[6]

Similarly, Count I explicitly applies to "truthful and non-misleading statements by Vanda and/or its agents regarding off-label uses for Hetlioz," *not* a specific instance of those communications. Compl. ¶ 241. It seeks a judgment declaring either that FDA's interpretation prohibiting "truthful, non-misleading speech about off-label uses" is wrong, or that the statute is

[6] Other examples abound. *See* Compl. ¶ 15 ("Plaintiff Mary Talley Bowden, M.D., … wishes to receive truthful, non-misleading information regarding treatments for jet lag disorder" so "she can exercise well-informed medical judgment"); *id.* ("Dr. Bowden reviews … information about the efficacy of off-label treatments for sleep disorders" but "is unable to view the communications that Vanda refrains from disseminating"); Compl. ¶ 16 ("Ms. Totah has a significant interest in obtaining truthful information about off-label treatments for jet lag disorder."); Compl. ¶ 25 ("FDA's regime restricting communications about off-label treatments deprives Dr. Bowden and her patients of current research and affects her practice."); Compl. ¶ 26 ("Ms. Totah has a significant interest in obtaining truthful information about off-label treatments for jet lag disorder."); Compl. ¶ 110 ("Individuals like Ms. Totah … are interested in receiving information from their doctors about potential jet lag treatments.").

unconstitutional as applied to "such speech." Compl. ¶ 243. Contrary to the government's suggestion, nowhere does Count I limit the claim to the materials Vanda sent to FDA; it never even mentions them. Compl. ¶¶ 239-244; *see also* Compl., Prayer for Relief ¶ 1. Only *Count II* focuses on the specific materials sent to FDA. Compl. ¶¶ 245-252.

The complaint and other filings identify and allude to some of the speech covered by Count I. Vanda wishes, for example, to communicate with the Texas Plaintiffs about information obtained through ongoing FOIA productions. *See* Compl. ¶¶ 87-88; Vanda Decl. ¶ 19. It wishes to share the "thorough declarations" from leading experts on sleep disorders, Dr. Thomas Roth and Dr. Daniel Combs, who have testified that "Hetlioz®'s efficacy in treating jet lag was undeniable." Compl. ¶ 101; Vanda Decl. ¶ 19. And Vanda wishes to provide a summary with excerpts of the recent decision in *Vanda Pharmaceuticals Inc. v. FDA*, No. 24-1049, 2025 WL 2371368, at *6-*7 (D.C. Cir. 2025), which observed that FDA "mischaracterize[d] the evidence" and "mostly dwell[ed] on minor and seemingly irrelevant disagreements with the cited studies' analysis" in defending its decision on the approvability of Hetlioz® for jet lag. Vanda Decl. ¶ 19. These are all examples of specific speech, apart from the attached materials, that Vanda intends to provide the Texas Plaintiffs upon prevailing in this litigation, but from which Vanda is currently chilled by FDA's approach. *Id.*

The Texas Plaintiffs' interests closely resemble the claims in *Virginia State Board* and *Cramer*. The allegation that Ms. Totah "frequently engages in international air travel and has experienced symptoms of jet lag disorder on multiple occasions" (Compl. ¶ 26) is akin to the claimed interest of the state resident who was "suffering from a disease requiring her to take prescription drugs frequently," and it is even more specific than the allegation that the association members were "dependent on prescription drugs." *Va. Citizens Consumer Council, Inc. v. State Bd. of Pharm.*, 373 F. Supp. 683, 684 (E.D. Va. 1974), *aff'd sub nom. Va. State Bd.*, 425 U.S. 748. Dr. Bowden's interest is similarly acute because she seeks "information relevant to her practice of

treating sleep disorders," and FDA's policy "deprives Dr. Bowden and her patients of current research and affects her practice." Compl. ¶¶ 25, 122. Furthermore, the challenged law in *Virginia State Board* "preclude[d the plaintiffs] from receiving information as to where prescription drugs may be bought at the least expense" (*id.*), just as FDA's policy here "prevent[s] Dr. Bowden's and Ms. Totah's receipt of … speech" "about off-label uses for Hetlioz®" (Compl. ¶ 35). And in *Cramer*, the plaintiff's interest in receiving "information concerning travel beyond the Love Field service area" (931 F.2d at 1026) sufficed, employing a similar level of specificity as the Texas Plaintiffs' interest in receiving "information about Hetlioz®'s ability to treat jet lag disorder" (Compl. ¶ 73). Case law thus places the Texas Plaintiffs well within the contours of standing.

**2.** Based on all the above, FDA's insinuation that the complaint fails to assert the Texas Plaintiffs' interest in receiving communications beyond the materials attached to the complaint (Mot. 11) is simply not correct. Not only is the complaint replete with allegations of their interest in speech about off-label uses for Hetlioz®, but those alleged interests, far from "vague and conclusory" (Mot. 11), are equally or *more* specific than those upheld in binding precedent (*see Va. State Bd.*, 425 U.S. at 756, and *Cramer*, 931 F.2d at 1027).

*Murthy*, the case FDA relies on in demanding more specificity (Mot. 11), *reaffirmed* the Court's prior holding that "prescription-drug consumers had an interest in challenging the prohibition on advertising the price of those drugs." *Murthy*, 603 U.S. at 75 (citing *Va. State Bd.*, 425 U.S. at 756-757). That case rejected an attempt to extend standing to "countless … social-media users" by asserting an "interest in reading and engaging with the content of other speakers on social media." *Id.* Such a theory was "boundless" because the interest was in potential speech on *any* topic by *nearly everyone* with an internet connection. *Id.* By contrast, the Texas Plaintiffs here—a sleep doctor and a sufferer from jet lag—assert an "interest[] in … information about off-label uses for Hetlioz® *from Vanda*" (Compl. ¶ 109), the manufacturer of Hetlioz® (*id.* ¶ 23). They "name[d] a specific 'willing speaker'" despite "no requirement … at the pleading stage" to do so.

*Ass'n of Am. Physicians*, 103 F.4th at 391. As in *Virginia State Board*, as reaffirmed by *Murthy*, the complaint demonstrates a "specific connection to the speaker." *Murthy*, 603 U.S. at 75.

Because the complaint sufficiently alleges facts showing that the Texas Plaintiffs are injured by the burden on their receipt of Vanda's communications, FDA's motion to dismiss for lack of standing should be denied. It follows that venue in this district, grounded in the Texas Plaintiffs' residence, is plainly proper. If this Court disagrees, however, the Plaintiffs request leave to amend their complaint to expand upon the current allegations of the Texas Plaintiffs' interests. *See Ass'n of Am. Physicians*, 103 F.4th at 394 ("[L]eave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances.").

## II. THE CASE SHOULD NOT BE TRANSFERRED FOR CONVENIENCE.

Transfer under 28 U.S.C. § 1404(a) "is only warranted if the moving party 'clearly establishes good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.' " *Media Matters*, 143 F.4th at 638 (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)). "And 'to establish good cause, a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue.' " *Id.* "That standard is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient.' " *Clarke*, 94 F.4th at 508 (quoting *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). This "significant burden on the movant to show good cause" reflects the importance of the "plaintiff's choice of venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008).

"Courts are required to assess four private interest factors and four public interest factors pertinent to a transfer motion." *Defense Distributed*, 30 F.4th at 433. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 433-434. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d at 315.

"Where there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed*, 30 F.4th at 434.

**A. The private interest factors do not favor a transfer.**

The private interest factors do not favor a transfer and certainly do not "clearly establish[] good cause." *Media Matters*, 143 F.4th at 638.

*First*, the relative ease of access to sources of proof favors this venue or is neutral. The evidence would address (1) FDA's implementation of the misbranding statute (*see* Compl. ¶¶ 53-73, 239-244); (2) the truthful and non-misleading character of Vanda's proposed communications (*see* Compl. ¶¶ 245-252); and (3) the Texas Plaintiffs' interest in receiving communications from Vanda (*see, e.g.*, Compl. ¶¶ 15-16, 25-26, 73, 109-110, 241-243). The case involves no physical evidence—just documents that are "electronic and can be available as easily in Texas as in [D.C.]." *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023); *see also Matter of Trinity Tugs, LLC*, 2025 WL 729714, at *4 (S.D. Tex. 2025) (finding this factor neutral even where "the vast majority of relevant documents" were located in the other venue but would all be "available electronically", and where there would be "no physical evidence"). And the documentary evidence is divided among the parties, and any expert witnesses. This factor does not clearly favor D.C.

*Second*, FDA has not argued that "the availability of compulsory process" favors a transfer. In any event, that factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify," and no showing has been made. *TikTok*, 85 F.4th at 360.

*Third*, the cost of attendance for willing witnesses favors this district. Both Texas Plaintiffs

reside here. And the Plaintiffs can state that two potential expert witnesses—Dr. Combs and Dr. Roth (*see* Compl. ¶ 101)—are located in Arizona and Michigan, respectively, making appearing in Houston equally or more convenient than doing so in D.C. *See* JA Vol. 2 at 241, 325, 447, 501, *Vanda*, No. 24-1049 (D.C. Cir.), ECF No. 2082033. FDA, meanwhile, has a nationwide network of experts that it can call upon regarding the truthfulness of Vanda's statements about Hetlioz®. FDA, Network of Experts Program: Connecting the FDA with External Expertise (Mar. 3, 2025), perma.cc/KGF2-2AWZ. And in the agency's review of Vanda's application for approval to treat jet lag, FDA did not retain any experts because it improperly denied Vanda's application "without holding a hearing." *Vanda*, 2025 WL 2371368, at *9.

*Fourth*, the factor addressing "all other practical problems that make trial of a case easy, expeditious and inexpensive" does not favor a transfer. FDA focuses on what it inaccurately describes as "overlapping" "administrative proceedings"—or litigation stemming from those proceedings—that "will happen in or around D.C." Mot. 17. But this proceeding does not overlap with the now-resolved D.C. Circuit appeal (neither rehearing *en banc* nor Supreme Court review of the panel's unanimous decision is likely). That court simply determined that "FDA could not properly deny Vanda's application … without holding a hearing." *Vanda*, 2025 WL 2371368, at *9. And on remand before the agency, the issue will be "whether [Vanda's] application is approvable" as an *on*-label jet lag treatment under 21 U.S.C. § 355(c)(1); that has nothing to do with the constitutionality of FDA's restrictions on *off*-label speech. *Id.* at *3.

Even the proposed communication that FDA cherry-picked from the complaint—that Hetlioz® "has been shown to be safe and effective to treat jet lag disorder"—does not turn on the same standards for safety and efficacy that will govern the administrative proceeding. 21 U.S.C. § 355. After all, the very premise of off-label prescribing is that physicians reasonably can conclude that a drug *has* been shown to be safe and effective even though it is *not* FDA-approved. *See* Compl. ¶¶ 37-52; *Henney*, 202 F.3d at 333 ("[I]t is undisputed that the prescription of drugs for unapproved

uses is commonplace in modern medical practice and ubiquitous in certain specialties."). It is thus a tremendous conflation for FDA to assert that the "merits" of that statement are controlled by its decision in the approval proceeding. Mot. 17-18. And it veers dangerously close to the unlawful regulation of the practice of medicine for FDA to declare that if it returns a non-approval decision, then all—including doctors—who subsequently state that available studies show Hetlioz® "to be safe and effective" for jet lag are not being truthful. *See Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 584 (5th Cir. 2023) (authorizing Dr. Bowden to challenge FDA's public statements, including "Ivermectin has not been shown to be safe or effective for [Covid]", as unlawful interference with her practice of medicine). In any case, that is only one of eleven statements, three reprints, three coversheets, two study summaries, and other communications Vanda wants to disseminate, and it should not carry significant weight in the transfer analysis. Compl. ¶¶ 126-196.

*Finally*, the Fifth Circuit has rebuffed attempts to coopt Section 1404(a) to "amass federal judicial power in the District of Columbia" simply because there are "federal defendants." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 307 (5th Cir. 2024). "If Congress wants to enshrine D.D.C. as a venue for … cases where a federal agency or other D.C.-based government actor is the defendant, it can easily do so." *Id.*

FDA has not offered a clear demonstration of any private interest factor. The Court therefore "cannot weigh" them against the Plaintiffs. *Defense Distributed*, 30 F.4th at 434.

**B. The public interest factors do not favor a transfer.**

The public interest factors support venue in this district. *First*, FDA has made no showing that D.D.C. is less congested than this Court. And in resolving FDA's motion, this Court will already have settled the question of standing, whereas a transfer would require the district court to repeat that analysis in discharging its independent duty to confirm subject-matter jurisdiction. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) (first public interest factor resisted transfer where the case was "timely proceeding to trial before the [initial venue]").

*Second*, the local interest favors decision in this district, where the Texas Plaintiffs are at home. Dr. Bowden is a physician who resides and practices "in Houston." Compl. ¶ 15. She relies on the receipt of medical communications to "exercise well-informed medical judgment to offer her patients suffering from jet lag disorder and related conditions the best possible treatment plan." *Id.* Those patients are "non-party citizens" whose interest in this litigation is paramount to "the local-interest inquiry." *Clarke*, 94 F.4th at 511. And FDA's policy "affects her practice," meaning it affects those patients. Compl. ¶ 25; *see also Sorrell*, 564 U.S. at 578 ("We have a saying in medicine, information is power. And the more you know, or anyone knows, the better decisions can be made."). Similarly, Ms. Totah is a resident of Harris County, and that is where she would receive "information from [her] doctors about potential jet lag treatments." Compl. ¶ 110. Ms. Totah's claim expresses "an interest in [he]r own health." *Va. State Bd.*, 425 U.S. at 755. Both Texas Plaintiffs are pursuing this lawsuit because the "free flow of information" has been impaired in their lives and in their hometowns. *Id.* at 765. Thus, "the location of the injury, witnesses, and the [p]laintiff[s'] residence" establish strong local interests in this venue. *Clarke*, 94 F.4th at 511.

*Third*, this Court is familiar with the law that will govern the case. *See Defense Distributed*, 30 F.4th at 436 (holding that this factor was "improperly weighed in favor of" the movant's venue where the claim at issue was "founded in the First Amendment" and the applicable law would not "defy comprehension by a federal judge sitting in [Texas]"). Indeed, its consideration of subject-matter jurisdiction favors this venue over a different district court addressing those issues anew.

*Fourth*, the avoidance of unnecessary problems of conflict of laws does not weigh in favor of D.D.C. "There are no risks of such a conflict here" because the Plaintiffs brought "federal law claims." *Defense Distributed*, 30 F.4th at 436.

Again, there has been "no demonstration by the movant, let alone a clear one," that any of the public interest factors favors transfer. *Defense Distributed*, 30 F.4th at 434.

### C. Transfer is not in the interest of justice.

Finally, FDA cites out-of-circuit authority to demand independent consideration of the interest of justice. Mot. 19; *but see In re Volkswagen*, 545 F.3d at 315 ("[T]he private and public interest factors" themselves encompass "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice."). In any event, justice does not favor transfer.

FDA's accusation that Dr. Bowden and Ms. Totah are "nominal co-plaintiff[s]," and that the Court should not "exhibit a naivete" about "why th[ey] are a part of this lawsuit," should be discarded. Mot. 20. Dr. Bowden is nationally recognized for her advocacy for reducing restrictions on access to medical information. She founded an organization to promote "accessible, unbiased information to help individuals make informed choices about their health." *See* Americans for Health Freedom (last visited Sep. 2, 2025), perma.cc/U4G7-QEQL. Just two years ago, Dr. Bowden prevailed in the Fifth Circuit against FDA regarding its intrusion into off-label prescribing. *Apter*, 80 F.4th at 595 ("Even tweet-sized doses of personalized medical advice are beyond FDA's statutory authority."). On top of all that, her specialization in sleep disorders gives her a sharp interest in this litigation and the burdened speech at issue. Compl. ¶ 15.

Ms. Totah has less of a high profile, but her interest in the litigation is no less important. She partnered with Dr. Bowden and Vanda not only because she frequently experiences jet lag and "would greatly benefit if [FDA's] prohibition were lifted and [speech about off-label treatments were] freely allowed" (*Va. State Bd.*, 425 U.S. at 753), but also because she knows Dr. Bowden personally and was inspired to zealously advocate for the same reforms.

In other words, the Texas Plaintiffs are not just a "local doctor [and] patient" that Vanda happened to "sign up." Mot. 20. They are serious people with real interests in the subject of this litigation, the government's attempt to denigrate them notwithstanding.

## CONCLUSION

For the foregoing reasons, the Court should deny FDA's motion.

Dated: September 22, 2025

Respectfully submitted,

/s/ *Paul W. Hughes*

Paul W. Hughes (*pro hac vice*)
Connor J. Suozzo (*pro hac vice* motion pending)
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

Richard Salgado (TBN 24060548)
McDermott Will & Schulte LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295-8000
rsalgado@mwe.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: September 22, 2025

/s/ *Paul W. Hughes*